HIPÓLITO NAZARIO GARCÍA ET AL., Plaintiffs and Appellants, *v.* MARÍA ISIDORA ALMODÓVAR HORRACH ET AL., Defendants and Appellees.

No. R-65-216.     Decided May 15, 1967.

---

*Esmeraldo Vélez Vargas* for appellants. *Carlos García Méndez* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

This is a dominion title proceeding filed by appellants in the Superior Court, requesting the acknowledgment of title over four parcels of land, described in the petition under letters A, B, C, and D.

Appellees objected to the petition as to parcel "A" alleging in their opposition that said property belonged to them, in undivided ownership by adjudication as heirs of Ramona Isidora Almodóvar, who, in turn, had acquired it by purchase from Ramón Antonio Almodóvar Horrach by deed No. 43 of April 4, 1949 and Almodóvar Horrach acquired it by purchase from appellants' predecessor in title,

Sinforoso Nazario Toro, and his wife Tomasa García, by deed No. 161 of July 17, 1924. It was also alleged in the opposition that the opponents and the former purchasers of the aforementioned parcel of land have been enjoying the possession of said parcel as owners, and that appellants' predecessor farmed said property as sharecropper or under oral sharecropping agreement entered into with the owner of said parcel, Ramón Antonio Almodóvar Horrach, and that he continued later with the subsequent owners of said parcel of land.

After a hearing at which oral and documentary evidence was introduced, judgment was rendered declaring valid appellees' title over property "A".

The oral evidence introduced during the hearing of the case in relation to this property was the following:

### Evidence for the Plaintiffs

*Efigenia Nazario Lugo:*

Testifies that her father, Sinforoso Nazario, left a two and one-half cuerdas property in Barrio Minillas in San Germán. It is bounded on the North by heirs of Melitón Almodóvar; on the South, formerly by the railroad track, now Sinforoso; on the East by Isidora Almodóvar; on the West, by a dust road which separates it from Belén Palmer's property. Sinforoso acquired the property by purchase from Rodulfo Nazario Jusino according to deed No. 77 of April 24, 1922. The property is valued at $2,000 and is free from liens. That since 1922 nobody disturbed her father in the enjoyment of the possession of the property, nobody has disturbed the heirs either after their father's death in 1961. Said possession has been public. At the present time it is in the possession of their eldest brother and it is devoted to the planting of sugarcane which is ground in Central Rufina on account of Sinforoso Nazario. On cross-examination she tes-

tified that she has no knowledge of her father selling the property after 1922. That her father was never a sharecropper. In the inheritance report it was reckoned as his, and it was assessed at $2,000. She has no knowledge of her father selling it to Ramón Antonio Almodóvar.

*Martín Colón:*

He is 73 years old and lives in Minillas, road. Before, he lived in Minillas Valley until 1958. He knew Sinforoso Nazario as well as the small farm which he left on Minillas Valley in El Retiro. That said small farm belonged to Sinforoso Nazario and after his death to the heirs of Nazario. That he knows for sure that Sinforoso Nazario was the owner because he worked for him on the two and a half cuerdas. He planted the sugarcane, trashed it and cut it. Sinforoso hired him to work on the farm and after his death it was Hipólito Nazario who hired him. The farm is still planted in sugarcane. He worked for "Foro" and the latter paid him. He knows María Almodóvar Horrach, José Pablo Almodóvar Horrach, and Hilda Ortiz. That he does not know that said farm has belonged to any other persons. That he worked on other farms of Foro and of the seniors Almodóvars. For the latter he worked since 1958. He never worked on the Almodóvars' two and a half cuerdas farm. At this instance the opponents' attorney intervenes (p. 22) and states that they have accepted that the farm is in the possession of the Nazarios. The witness further testifies that he has never been away from Minillas.

On cross-examination he testifies that he knew that the farm belonged to Nazario because he worked for him and he was the one who paid him. That he knew that the farm belonged to Sinforoso Nazario because the latter bought it from Rodulfo Nazario in 1922. He does not know whether he later sold it to anybody else. That sugarcane was planted in 1962 in the whole two and a half cuerdas, but not evenly.

*Luis Manuel Acosta:*

He is 75 years old and lives in Minillas Valley. He knows Sinforoso Nazario's farm and has not known any other persons in possession of the same. He knew Sinforoso Nazario and his children as owners. He has never been away from Barrio Minillas. He has worked on the farm cutting the cane and using oxen and carts belonging to him and Sinforoso Nazario has paid him. On cross-examination he testifies that he also worked for Nazario's brother. He does not know that anybody has bought the two and one-half cuerdas from Nazario.

*Julián Caballero:*

He is a Supervisor of Stabilization and Soil Conservation in Mayagüez. As supervisor he keeps a record of all the farms which receive sugar compensation, a specific account of the number of cuerdas and the sugarcane harvested every year. These records relate to each *colono*. He has the records of Sinforoso Nazario in which the latter appears as the employer and owner of all the farms. He does not appear as sharecropper. In the case of a sharecropper when the compensation is paid the request for pay is signed by the sharecropper and the employer. Payment is made individually to the sharecropper and the employer. The request must be presented by both of them and payment is made to both of them. According to the record the person who signed is Hipólito Nazario. On cross-examination he testified that Hipólito Nazario signed from 1961 on. Prior to 1961 there appears no record signed because it was Sinforoso's. If the farm is leased the employer is the one who cultivates it. If it is leased then a lease contract is required. Before 1961 Nazario appeared as the owner. He must have presented documents to that effect, but at the present time they have only those documents from and after 1961, because in case of small farms after one registration the deeds were returned to the interested persons. When a person goes to

them and says he is the owner of a property a deed is required. A copy of a deed is shown to him to see if he can identify it as the one presented by Nazario and he says that there is no mark showing that it has passed through his office. He cannot say that a document has been presented which was not the one shown to him. That one must have been presented but he cannot assure it because it was not presented to him. That there was a time around 1938 when deeds were not presented. The person went to the mill, gave the information and that was enough. Since 1940 that he has been working for the agency deeds have been required.

*Miguel Padovani:*

He lives in San Germán and is an employee of Central Rufina where he has worked for 12 years. He works as inspector of *colonos*. He knows Sinforoso Nazario's farm, and it is planted in sugarcane. Nazario was a *colono* of the Central. He inspected Nazario. His sugarcane was ground on his account, and later on his heirs' account. When it was ground in Sinforoso's name he appeared as owner. Subsequent to Nazario's death, the heirs appear as owners, and not as sharecroppers. When there is a sharecropper the latter has to fill out some forms in the office and both the owner and the sharecropper get compensation and both have to sign. If they do not sign neither of them gets paid. The SECA makes the payments in the name of both. On cross-examination he testifies that he has been working for the Central since 1953. If the parties do not state that they are sharecroppers it is not the business of the Central, it is the business of the SECA. He is not a SECA employee, but they are the ones who summon the *colonos* to sign for compensation. If the person is the owner he has to prove it, and the SECA records show that Nazario is the owner. That when he went to work in the Central the papers where Nazario appeared as owner were already in record. The papers say

that Parcel A and B belonged to him. They required a deed. Two deeds of sale are shown to him where Rodulfo Nazario is the vendor in one, and Sinforoso Nazario is the vendor in the other in 1924.

*Santos Rivera Pabón:*

He is forty-four years old and was born and raised in Minilla Valley in San Germán. He knows Sinforoso Nazario's farm of two and one-half cuerdas. He knows because Ramón Antonio Almodóvar was his wife's father, and the latter never told him that he had sold. He was asked what persons were in possession of the farm formerly; then, the opponents' attorney indicates again that they accept that Sinforoso had it (p. 45). He also accepts that it was tilled by Heirs of Sinforoso Nazario. The witness further testifies that he never knew that Sinforoso Nazario had worked as sharecropper. On cross-examination he testifies that the farm previously belonged to Rodulfo Nazario, that he does not know who bought it, nor when it was sold, nor can he tell whether he had sold it. At the end of the cross-examination the judge asks what is the family relationship between the witness and the Almodóvars. It is explained that he was married to Ramón Antonio Almodóvar's daughter, who, according to the opponents, was the one who bought Sinforoso Nazario's farm.

Evidence for the Opponents

*Jenaro C. Nazario:*

Testifies that he lives in Minillas. He knew Sinforoso Nazario, Ramón Antonio Almodóvar Horrach, who was his uncle, and Ramona Almodóvar Horrach. That the original owner of the two and a half cuerdas farm was Sinforoso Nazario, who had bought it from Rodulfo Nazario. Nazario sold it to Ramón Almodóvar Horrach and in 1949 the latter sold it to the witness' cousin, Ramona Almodóvar Horrach. Mrs. Almodóvar Horrach died leaving a will in which she

instituted the witness as executor. After Mrs. Almodóvar's death they proceeded to the liquidation and partition of her estate and the witness and the heirs of Isidora came to be owners of the farm. That María Isidora Almodóvar was his aunt; Pablo Almodóvar, uncle; Rosa Cruz, adopted daughter; Rosa Julia, his daughter; Melitón, Rafael and Monserrate Almodóvar, cousins, and Eusebia María Almodóvar, acknowledged daughter. That the farm was sold to Ramón Antonio Almodóvar. That there was a verbal sharecropping contract. That he knows because he visited Almodóvar's house and he was like a consultant. That after the farm was sold, Sinforoso Nazario continued cultivating it like when Ramón Antonio sold it to Ramona Isidora Almodóvar. That Nazario continued as sharecropper and all the family remembered him as such. That in 1951, after the death of Ramona Isidora they asked Sinforoso to return them their farm. That he used to pay them, but later he refused to do so, because that farm had not been sold to his uncle. That he insisted that Sinforoso should pay, but the latter refused to do so. After Nazario's death they have asked the heirs to pay, but they have refused. Taxes were paid by the heirs of Isidora.

On cross-examination he testifies that Sinforoso paid in cash and kind. That he did so for three years after 1951. Before 1951 he paid to his aunt. He knows it was so because he lived in the house and he was always present when he paid. That his aunt said that the money was from the sharecropping contract. That he called Jobo and asked him to pay and the latter said that maybe that land had not been sold. They said it from and after 1951. As Ramona's testamentary executor he claimed payment from Sinforoso and he paid two or three years, that was six or eight dollars. That his brother-in-law went to them to see if he could collect and he was told that they would rather kill than return the

farm to his relatives. That was in 1957. They consulted the family attorney and he started the proceedings for an unlawful detainer in 1961. That they tried through friends to obtain the delivery of the farm. As executor he tried to make them comply. That it is not true that he took steps to buy the farm from Foro. As owners of the farm they were never required to accept or pay damages. After 1951 he received money for two or three years, which was the full extent of the account. That in 1951 Sinforoso agreed to continue with the sharecropping contract. That Sinforoso never consented to return the farm. That was from 1951 on. After 1951 he made one sharecropping payment to him and two or three to his aunt. That before 1951 he paid to his aunt in cash, $125 or $140.

Feeling aggrieved by the judgment rendered, petitioners requested the review of said judgment in this Court. They alleged the commission of two errors by the trial court:

"1. The trial court erred in deciding that the opponents are the owners of the two and one-half cuerdas parcel of land described under letter A notwithstanding that the opponents themselves admitted at the trial that plaintiffs' predecessor in title first, and then the plaintiffs themselves had had possession of said farm since the year 1922.

"2. The trial court erred in weighing the evidence as a whole."

The judgment of the trial court declaring proved the ownership of parcel A in favor of opponents is based (1) on the deed of sale of said parcel executed in the year 1924 by Sinforoso Nazario Toro and his wife in favor of Ramón Antonio Almodóvar Horrach who, in turn, sold it, in 1949, by public deed to Ramona Isidora Almodóvar Horrach, opponents' predecessor in title, (2) on the tax payment by opponents and their predecessor, and (3) on the possession of "said undivided property, quietly, peacefully, and publicly, and without interruption since the death of their predecessor

in title Ramona Isidora Almodóvar Horrach, and counting the period of possession of the latter and the former owners, said uninterrupted possession has lasted over thirty years under the proper title."

■ The deed of sale executed in 1924 by plaintiffs' predecessor in title in favor of Ramón Antonio Almodóvar Horrach is not decisive as to the ownership rights of the parties over the property in litigation. This dominion title is extinguished and lost in the presence of another obtained through acquisitive prescription. 31 L.P.R.A. § 5280; *González* v. *Heirs of Roqué*, 47 P.R.R. 492 (1934); *Morales et al.* v. *Landrau et al.*, 15 P.R.R. 761 (1909).

■ The fact that the property taxes are paid is not controlling either of the dominion title although it is a factor to be considered in determining whether a person is the owner of a property. In *Dávila* v. *Córdova*, 77 P.R.R. 125, 144 (1954), defendant-appellee heirs argue that they paid property taxes and this Court, citing *Jiménez* v. *Municipality*, 70 P.R.R. 491 (1949), stated: "We have already held that the fact that a person has been in possession of certain property for well over thirty years without paying taxes thereon, does not mean, by itself, that she was a mere occupant."

It is a fact admitted by the opponents that plaintiffs and their predecessor in title have held the material possession of the property since the year 1922, date on which Sinforoso Nazario acquired it from Rodulfo Nazario Jusino by public deed, that is, for over 30 years. Therefore, the question narrows down to determining whether since 1924, date on which Nazario executed the deed of sale in favor of Almodóvar Horrach, the vendor continued to hold possession of the property publicly and uninterruptedly and in the capacity of owner.

For the purpose of showing that neither the plaintiffs nor their predecessor in title held possession in the capacity of owners, the interveners tried to prove the existence of a verbal sharecropping contract between the true owners and Almodóvar.

Based on this sharecropping contract the trial court decided against plaintiffs. It erred in so doing. The only evidence on the alleged sharecropping contract consisted in the testimony of Jenaro C. Nazario. This witness was the executor instituted by Ramona Almodóvar Horrach, and according to his testimony he has come to be the owner of the property together with Isidora Almodóvar's heirs. As to the sharecropping contract he knows of its existence because he saw when Sinforoso Nazario paid, first to his aunt, and the latter told him that the money was from the sharecropping contract; and then, after the year 1951, Sinforoso paid to him two or three times.

■ Actually said testimony is vague, inaccurate and very general as to the alleged sharecropping contract, and it should have been declared insufficient at law to extinguish a dominion title acquired by plaintiffs by prescription, as it appears by the preponderance of the evidence adduced by the latter.

The community considered first Sinforoso and then his heirs as the owners of the property for over 30 years. This fact was established by the persons who worked on the farm as well as by other persons with whom first Sinforoso Almodóvar [sic] and then his successors had relations as a result of the cultivation of the property such as the Supervisor of Stabilization and Soil Conservation in Mayagüez, Julián Caballero, and the Inspector of colonos of Central Rufina, Miguel Padovani.

Plaintiffs having fully established, by the preponderance of the evidence, their right of ownership over the property described under letter A—Dávila v. Córdova, supra—the

judgment rendered by the Superior Court will be reversed, and another rendered so decreeing.